IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JUDITH LIEGMANN, et al., | NO. C 05-03828 JW |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| CALIFORNIA TEACHERS ASSOCIATION, et al., | |
| Defendants. | |

## I. INTRODUCTION

This case originally came before the Court as an ex parte application for a temporary restraining order ("TRO") filed by six California teachers and professors ("Plaintiffs") purporting to represent a class of all individuals who pay dues or fees to the California Teachers Association ("CTA") and California Faculty Association ("CFA"), (collectively "Defendants"). The Court denied the TRO on October 7, 2005, and Plaintiffs voluntarily dismissed their suit against the CTA. Presently before the Court are the parties' cross motions on summary judgment. On June 26, 2006, the Court held a hearing on the parties' motions. Based on the statements of counsel at the hearing and the papers submitted, Defendant's Motion is GRANTED and Plaintiffs' Motion is DENIED.

## II.  BACKGROUND

**A.   Factual History**

Defendant CFA is a union representing faculty in the California system of higher education. By statute, the CFA acts as the exclusive bargaining representative of faculty in California colleges, and may impose compulsory union dues or fees.  Because the CFA also engages in political activities in addition to its collective bargaining activities, the CFA automatically charges a reduced "fair share fee" to nonmembers equal to a certain percentage of full member dues.  This percentage is calculated based on the prior years' percentage of expenditures for "chargeable activities" --those activities directly related to the union's bargaining activities.  For the CFA, the percentage of the full member dues that a nonmember must pay in her fair share fee is currently, and has historically been about 70%.  Dues from members and fair share fees from nonmembers appear to be directly deducted from teachers' paychecks.

Plaintiffs are a class of all persons who were nonmember fair share fee payers of the CFA at time the CFA began to collect a 10.526% increase in fees[1] in July of 2005.  Plaintiffs contest the use of their increase in fees for defeating the November 8, 2005 ballot initiatives, and taking other political and non-bargaining actions.

**B.   Procedural History**

Plaintiffs filed an application for a TRO on September 28, 2005 to place in escrow the increase in dues and fees collected from nonmembers of the CFA and members of the CTA.  The Court denied Plaintiffs' request for a TRO in an Order filed on October 7, 2005 ("TRO Order" Docket Item No. 34). Plaintiffs voluntarily dismissed their case against the CTA and filed an amended complaint against only the CFA.

The Court denied the CFA's motion to dismiss without prejudice to reassert similar

---

[1] The parties dispute the proper characterization of the 10.526% increase in fees.  For the sake of simplicity, the Court refers to the increase in fees as "Assessment" while noting that the CFA was scheduled to review the increase in Spring of 2006, and the record indicates that because no CFA delegate called for the end of the increase, the increase will continue on a permanent basis. (Muscat Decl. in Supp. of CFA's Mot. for Summ. J., ¶ 3.)

2

arguments in a future motion, and ordered the parties to appear at a case management conference. At the case management conference, the Court scheduled the present cross-motions for summary judgment for hearing following the close of the CFA's fiscal year in order to determine whether the circumstances around the Assessment were so extraordinary as to require a deviation from the procedures approved of in Chicago Teachers Union Local No. 1 v. Hudson, 475 U.S. 292 (1986).

### III. STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323.  If this burden is met, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element with respect to which the non-moving party bears the burden of proof at trial. Id. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial. " Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law . . . Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio,

475 U.S. 574, 586 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) (citing Anderson, 477 U.S. at 255); Matsushita, 475 U.S. at 588; T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Serv., 809 F.2d at 631. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587.

## IV.  DISCUSSION

Plaintiffs seek summary judgment on their claims that the CFA's mid-year Assessment violated their substantive and procedural First Amendment rights. The CFA moves for summary judgment that they have not violated Plaintiffs' rights because the CFA has complied with its obligations under Chicago Teachers Union Local No. 1, v. Hudson, 475 U.S. 292 (1986).

**A.    Substantive First Amendment Rights**

To protect the substantive First Amendment free speech rights of nonmember fee payers, "unions must adopt procedures 'such as advance reduction of dues and/or interest-bearing escrow accounts.'" Grunwald, 994 F.2d at 1374 (quoting Ellis v. Railway Clerks, 466 U.S. 435, 444 (1984)). As for calculating the percentage by which dues should be reduced in advance, the Supreme Court in Hudson expressly found that retrospectively calculating the reduced fair share fee based on the prior year's expenditures is permissible for Constitutional purposes: "We continue to recognize that there are practical reasons why '[a]bsolute precision' in the calculation of the charge to nonmembers

4

cannot be 'expected or required.' Thus, for instance, the Union cannot be faulted for calculating its fee on the basis of its expenses during the preceding year." Id. at 307 n.18 (citations omitted).  This District has interpreted and applied Hudson accordingly: "Recognizing the difficulty in requiring exact figures from a union engaging in on-going operations, the Court permitted the union to extrapolate from prior fiscal year data as the basis for future charges." Laramie v. County of Santa Clara, 784 F. Supp. 1492, 1496 (N.D. Cal. 1992).

The record shows that the agency fee percentage for 2005 was 70% based on 71.62% chargeable expenses during the fiscal year that ended on August 31, 2004, and that the Assessment was a 0.1% in increased dues for members, or 0.07% in increase fair share fees for fair share fee payers because the chargeable percentage of 70% was applied to the increase. (Muscat Decl. at ¶ 3.) Because the Assessment was reduced in advance by the fair share fee percentage and Hudson precludes this Court from faulting a union for calculating its fee based on the prior year's expenditures, 475 U.S. at 307 n.18, the Court finds that the Assessment does not violate Plaintiffs' substantive First Amendment rights.

**B.     Procedural First Amendment Rights**

Presented with similar allegations of substantive and procedural First Amendment violations as those asserted by Plaintiffs in this case, the Supreme Court in Hudson placed a number of procedural requirements on "agency shop" unions[2] in order to prevent the "compulsory subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining activities." Hudson, 475 U.S. at 302 (citing Abood v. Detroit Board of Education, 431 U.S. 209, 237 (1977)). For annual fee and dues collection, unions are required to give notice to "minimize the risk that nonunion employees' contributions might be used for impermissible purposes...provide adequate justification for the advance reduction of dues, and...offer a reasonably prompt decision by an impartial

---

[2] "Under an 'agency shop' arrangement, a union that acts as exclusive bargaining representative may charge nonunion members, who do not have to join the union or pay union dues, a fee for acting as their bargaining representative." Hudson, 475 U.S. at 303 n.10.

5

decisionmaker" (hereinafter "Hudson Notice").

The CFA's Hudson Notice in January 2005 meets the requirements of Hudson. The audited statements in the Hudson Notice detail the amount of each expenditure and the percentages of each expenditure which is chargeable and nonchargeable based on the fiscal year ending August 31, 2004, providing adequate justification for the advance reduction of dues for 2005 that was later applied to the fair share fee portion of the Assessment.

**C.     Extraordinary Circumstances**

Plaintiffs correctly note that the Supreme Court in Hudson was not presented with a mid-year fee increase. Nor was such an increase contemplated in the earlier decisions of Abood v. Detroit Board of Education, 431 U.S. 209 (1977) or Ellis, 466 U.S. 435. Thus, the remaining question before the Court on these motions is whether the application of the CFA's Hudson-compliant annual procedures to the Assessment are Constitutionally adequate, or whether the Assessment was so extraordinary as to require additional requirements beyond those enumerated in Hudson.

As an initial matter, the Court recognizes that even a small amount of fees exacted in violation of the First Amendment is still a First Amendment violation. See Hudson, 475 U.S. at 305-06. However, Plaintiffs' assertion that the difference between the present percentage of chargeable expenditures and the prior fiscal year's chargeable percentage rate constitutes a First Amendment violation no matter how small, places the cart before the horse. Given the Supreme Court's finding that an agency fee may be calculated based on the prior year's expenditures such a deviation, or the built-in delay, is not constitutionally impermissible. The amount by which the present chargeable expenditure percentages differ from historical rates is relevant to this Court's analysis to determine whether the Assessment is within the nature of union activities contemplated by and approved by the Supreme Court in Hudson.

The record of CFA expenditures following the Assessment demonstrates that a departure from Hudson is not warranted. The percentage of chargeable expenditures applied to fee payers since 2000 has ranged from 67% to 73%. (Ross Decl. in Supp. of CFA's Mot. for Summ J. at 3:8-

13.) For the first half of the CFA's fiscal year starting September 1, 2005 the percent chargeable is 67.57% which is in line with historical rates. (Ross Decl. at Exh. J.) The percentage of expenditures that were chargeable for the fiscal year beginning September 1, 2005 through March 31, 2006 is 68.84%.

Plaintiffs note that the percent chargeable is only 62.90% for the six months from July 1, 2005 through December 31, 2005. This six-month period straddles two fiscal years and includes the entire election season, demonstrating that at any given point in time the split between chargeable and nonchargeable expenditures may vary depending on the union's activities. For example, during the week before the November special election, the percentage of nonchargeable expenditures is likely very different from a week in which the CFA renegotiated a comprehensive collective bargaining agreement. Hudson permits an annual audit and notice procedure based on the prior fiscal year's expenditures; Hudson does not require real-time financial auditing or auditing of particular snapshots of a union's activities.

Plaintiffs also rely on communications from the CFA to demonstrate that the Assessment was improperly enacted for purely political purposes. In a letter dated April 24, 2005, ("April Letter") the CFA announced "a proposal for an increase in CFA dues to be reviewed in one year," and stated that this proposal was based on three needs:

> We must respond as strongly as possible to the political threats to our pensions and to our salaries.
> We must increase our capacity to fight for more money for the CSU budget in a long, difficult budget process that begins with the CSU Trustees and concludes in the hands of the governor and top leaders of the state legislature.
> We must persistently build and maintain the power to achieve the best possible contract for the faculty, with higher faculty salaries and relief from excessive workloads.

(Muscat Decl. at Exh. C.) Because only the last of the three needs disclosed in the April Letter is clearly chargeable, Plaintiffs argue that the April Letter demonstrates that most if not all of the Assessment would be spent on nonchargeable activities. An assessment for purely political purposes, Plaintiffs argue, would be an extraordinary circumstance for which Hudson provides

7

inadequate First Amendment protections. This Court need not reach the question of whether an assessment for purely political purposes would necessitate a deviation from Hudson because the facts of this case do not raise such a question. The April Letter does not disclose the allocation of the funds between these three stated needs. Nor is there anything in the record that suggests a prior allocation of the Assessment. The manner in which the CFA chose to market or raise support for its dues increase does not rise to a Constitutional violation.

Because the Court does not find that a departure from Hudson procedures is warranted, the Court declines to place additional restrictions on the unions in the form of the mid-year notice and rebate scheme proposed by Plaintiffs. As the Court noted in the TRO Order, this Court will not require that nonmembers are further entitled to another Hudson Notice, in advance, detailing exactly how much of the additional revenue generated by a fee increase will be spent on which purpose. There is nothing in Hudson or subsequent authority which requires that Hudson Notices provide such advance detail. See, e.g., Grunwald v. San Bernardino City Unified School Dist., 994 F.2d 1370, 1376 n.7 (9th Cir. 1993) ("[t]he test, after all, is not whether the union and the school district have come up with the system that imposes the least burden on agency fee payers, regardless of cost (a test no system could possibly satisfy); rather, we inquire whether the system reasonably accommodates the legitimate interests of the union, the school district and nonmember employees"), Andrews v. Education Ass'n of Cheshire, 829 F.2d 335, 340 (2d Cir. 1987) ("[w]hen the union's plan satisfies the standards established by Hudson, the plan should be upheld even if its opponents can put forth some plausible alternative less restrictive of their right not to be coerced to contribute funds to support political activities that they do not wish to support").

## V. CONCLUSION

For the reasons above, Defendant's motion for summary judgment is GRANTED and Plaintiffs' motion for summary judgment is DENIED.

Dated: June 28, 2006  /s/ James Ware  
05cv3828sj  JAMES WARE  
United States District Judge

8

**United States District Court**
For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Diane Lee Ross dross@cta.org
Glenn Rothner grothner@rsglabor.com
Jeffrey B. Demain jdemain@altshulerberzon.com
Jonathan Weissglass jweissglass@altshulerberzon.com
Milton L. Chappell mlc@nrtw.org
Peder J. Thoreen pthoreen@altshulerberzon.com
Priscilla Sue Winslow pwinslow@cta.org
Stephen P. Berzon sberzon@altshulerberzon.com

Steven Burlingham
Gary Till & Burlingham
5330 Madison Avenue
Suite F
Sacramento, CA 95841

**Dated: June 28, 2006**               **Richard W. Wieking, Clerk**

                                        **By:_/s/ JW Chambers_____**
                                           **Melissa Peralta**
                                           **Courtroom Deputy**